UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | | |
|---|---|---|
| GREGORY L. DUNN, | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | Case No. 05-2029 |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

In July 2004, Barbara Welsch, an administrative law judge (hereinafter "ALJ"), denied social security benefits to Plaintiff Gregory Dunn. The ALJ based her decision on findings that Plaintiff was not disabled within the meaning of the Social Security Act and he was capable of performing a significant number of jobs available in the national economy.

In February 2005, Plaintiff filed a Complaint (#1) against Defendant Jo Anne Barnhart, the Commissioner of Social Security, seeking judicial review of the final decision by the Regional Commissioner of the Social Security Administration denying social security benefits. In July 2005, Plaintiff filed a Motion for Summary Judgment (#7) and in September 2005, Defendant filed a Motion for an Order Which Affirms the Commissioner's Decision (#11). After reviewing the administrative record and the parties' memoranda, this Court recommends **GRANTING** Defendant's Motion for an Order Which Affirms the Secretary's Decision **(#11)** and **DENYING** Plaintiff's Motion for Summary Judgment **(#7)**.

## I. Background

### A. Procedural Background

Plaintiff applied for social security benefits in October 2001, alleging disability beginning September 18, 2001, based on nerve problems in his feet and legs. The Social Security Administrative denied his application initially and upon reconsideration. He appealed

and ALJ Welsch held a hearing in November 2003. In July 2004, the ALJ denied Plaintiff's application for social security benefits based on findings that Plaintiff was not disabled within the meaning of the Social Security Act and he was capable of performing a significant number of jobs that exist in the national economy. In December 2004, the Appeals Council denied Plaintiff's request for review and Plaintiff subsequently appealed the decision to this Court.

### B. Plaintiff's Medical Background

The following background is taken from the record. Plaintiff was forty-six years old at the time of the ALJ's decision. He had a general education diploma and had previously worked as a machine operator, a job that involved constant standing and walking and required frequent lifting of more than fifty pounds. At the November 2003 hearing, he testified that he was five feet eight inches tall and weighed around 290 pounds.

Plaintiff has had back problems since the 1980s and he had lumbar back surgery in 1989. He was disabled for about two years beginning in July 1990 and then gradually worked his way back to full-time employment. He had arthroscopic surgery on his knee in 1997. Following this surgery, Plaintiff experienced pain and numbness in his feet and legs up to his knees. (R. 120.)

In March 2001, Dr. Laura Schlagel diagnosed Plaintiff with mild diffuse neuropathy in all of his extremities, affecting his legs more than his arms; and with bilateral tarsal tunnel syndrome. (R. 119-23.) She also observed that Plaintiff shuffled when he walked, but he had a "normal gait with good toe, heel and tandem walking." (R. 120-21.) Prescription medication did not ease the pain in his feet and legs. In November and December 2001, Plaintiff sought treatment from Dr. Tomasz Borowiecki, an orthopedic surgeon, for pain and heaviness in his legs from the hips down. Dr. Borowiecki opined that Plaintiff had tarsal tunnel syndrome and told Plaintiff that surgery would not address all of the problems. (R. 150-51.) An MRI of the lumbar spine taken in November 2001 showed a bulging disc at L3-4 and hardware from the 1991 surgery that interfered with evaluation below that level (R. 137).

In October 2001, Plaintiff's employer sent Plaintiff to see Dr. David Fletcher, one of its doctors. Dr. Fletcher evaluated Plaintiff in October and November 2001 and opined that he had severe tarsal tunnel syndrome, he could not walk normally, and he could not work. (R. 155.) In December 2001, Dr. Fletcher examined Plaintiff again and stated that he has "definite electrodiagnostic tests for tarsal tunnel syndrome." (R. 155.) He also stated that Plaintiff's gait was still very abnormal and he was not fit for his job. Dr. Fletcher stated, "I believe he would be a direct threat to his health and safety . . . . I have kept him off work with no recheck." (R. 155.)

In December 2001, Dr. James Graham, a state agency physician, evaluated Plaintiff's residual functional capacity (hereinafter "RFC") based on Plaintiff's medical record. He noted Plaintiff's weight and body mass index of forty-four and Plaintiff's complaints of decreased sensation in his legs. He opined that Plaintiff had the RFC to perform sedentary work with no climbing and only occasional balancing, stopping, kneeling, crouching, or crawling. He could occasionally lift ten pounds and he could stand and/or walk at least two hours in an eight-hour workday.

In February 2002, Plaintiff underwent an examination by Dr. Hima Atluri at the request of the state agency. Dr. Atluri noticed significant sensory loss in both lower extremities, and also noted that Plaintiff had a full range of motion in all joints and in his lumbar spine and that he walked with a normal gait. Dr. Atluri opined that Plaintiff had unexplained neuropathy and was significantly obese. (R. 169.) In March 2002, another state agency physician reviewed Plaintiff's medical records and opined that Plaintiff could perform sedentary work as long as the job required no balancing and only occasional climbing, stooping, kneeling, crouching, or crawling. (R. 110.)

In April 2002, Plaintiff consulted Dr. Ronald Michael, a neurosurgeon, complaining of worsening leg pain and low back pain. Dr. Michael's examination notes indicate that Plaintiff had normal motor strength, sensation, and reflexes, and negative straight leg raising. (R. 174.)

A myelogram and post-myelogram CT scan showed central and lateral recess stenosis at L3-4. (R. 170.) In May 2002, Dr. Michael opined that the "pathology evident on myelography is quite significant." (R. 173.) He recommended nerve block injections; however, they did not help Plaintiff's pain. (R. 170.) In July 2002, Dr. Michael discussed surgery with Plaintiff and Plaintiff stated that he wished to go ahead with surgery because he did not think he could live with the pain as it was. (R. 170.) In August 2002, a lumbar diskogram indicated abnormalities at L3-4 and L5-S1. (R. 172.)

### C. Testimony at the Hearing

At the hearing, Plaintiff testified that he experiences constant pain that becomes worse with any exertion or sustained posture. Sitting causes his numbness and pain to worsen after about fifteen minutes, requiring Plaintiff to change position. He was able to drive to the hearing (about thirty miles), but had to stop twice to get out of the car and straighten up. He has difficulty sleeping and usually sleeps about two and a half to three hours a night. Regarding his daily activities, Plaintiff testified that he gets up about five in the morning. He bathes and dresses himself. He fixes simple meals for himself and cleans up afterwards. He may feed the cats. He is unable to do laundry. He accompanies his wife when she goes grocery shopping and walks behind the cart. If he starts feeling uncomfortable, he will sit down. He watches a little television and tries to read but is unable to concentrate. He enjoys working on genealogy but is unable to work on it for very long. His grandchildren sometimes stay overnight if his wife is present. He drives short distances about twice a week. He can walk about a half of a block before he experiences severe pain. He cannot do yard work  He does not go fishing or visit with friends. He does not have a computer and does not use the internet or email. He does not travel far from home or go out of state.

Stephen Dolan, the vocational expert (hereinafter "VE"), also testified at the hearing. The ALJ asked the VE to consider an individual of Plaintiff's age, education, and past relevant work experience, who was limited to sedentary work requiring no climbing or work at unprotected heights and no use of foot or leg controls or prolonged standing or walking. The VE

testified that such an individual could perform work as a food and beverage order clerk, cashier, and assembler. The VE further testified that the jobs of cashier or food and beverage order clerk would allow such an individual to change positions from sitting to standing whenever he needed. The ALJ explicitly stated that Plaintiff's RFC did not require him to change positions as needed. (R. 22.)

### D. The ALJ's Decision

To be entitled to social security disability benefits, a plaintiff must show that he is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 416(I)(A). To determine disability, the Commissioner uses a five-step sequential evaluation. She determines: (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, that is, one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his past relevant work; and (5) if the claimant cannot perform the past work, whether the claimant can do other jobs that are available in the national economy. The claimant bears the burden of production and persuasion at Steps One through Four. Once the claimant shows he is unable to perform past work, the burden shifts to the Commissioner to show that a claimant is able to engage in some other type of substantial gainful employment. *Campbell v. Shalala*, 988 F.2d 741, 743 (7th Cir. 1993).

The ALJ's decision followed this five-step process. At the first step, the ALJ found that Plaintiff has not been engaged in substantial gainful activity since September 18, 2001. At the second step, the ALJ determined that Plaintiff has degenerative disease and stenosis of the lumbar spine, obesity, diffuse neuropathy of the lower extremities, tarsal tunnel syndrome, a history of carpal tunnel syndrome, hypertension, and asymptomatic cholelithiasis, a combination of impairments that is severe within the meaning of the Social Security Act. At the third step,

the ALJ determined that Plaintiff's condition did not meet or medically equal any of the impairments listed in the regulations.  At step four, the ALJ determined that Plaintiff was not able to perform his past relevant work.  At step five, the ALJ determined that Plaintiff had the residual functional capacity to perform a significant number of jobs in the national economy despite his impairments.  In addition, based on testimony from Plaintiff and a vocational expert and evidence from the medical record, the ALJ found that Plaintiff had the RFC to perform the nonexertional and exertional requirements of sedentary work except that he cannot perform work requiring any climbing or work at unprotected heights, prolonged standing and walking, or use of leg or foot controls.  Finally, the ALJ stated that Plaintiff's statements regarding his subjective symptoms and functional limitations were generally credible "as to type, but not as to degree." (R. 23.)  Ultimately, the ALJ found that Plaintiff was not eligible for social security benefits.

## II.  Standard of Review

In reviewing an ALJ's decision, this Court does not try the case *de novo* or replace the ALJ's finding with the Court's own assessment of the evidence.  *Pugh v. Bowen*, 870 F.2d 1271, 1274 (7th Cir. 1989).  The findings of the Commissioner of Social Security as to any fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Thus, the question before the Court is not whether Plaintiff is, in fact, disabled, but whether the evidence substantially supports the ALJ's findings.  *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).  The Supreme Court has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether Plaintiff is disabled, the Court must affirm the ALJ's decision denying benefits.  *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996).

If the Court finds that the ALJ's decision is not supported by substantial evidence, the Court may reverse the decision and remand for further administrative proceedings (42 U.S.C. § 405(g)), or reverse the decision and immediately award benefits if "the record can yield but

one supportable conclusion," and there are no unresolved factual issues. *Campbell*, 988 F.2d at 744.

### III. Analysis

Plaintiff argues that (1) the ALJ erred at step three because Plaintiff's back impairment is medically equal to Listing 1.04; (2) the ALJ failed to give adequate weight to the opinion of Plaintiff's treating physician; and (3) the ALJ failed to properly evaluate Plaintiff's peripheral neuropathies. Plaintiff also states in his memorandum that the ALJ's determinations regarding credibility and RFC were improper, but he did not present any evidence or argument on these issues; therefore, the Court will not consider them.

#### A. The ALJ's Analysis at Step Three

Plaintiff first argues that the ALJ erred at step three by finding that his back impairment did not medically equal a listed impairment. Specifically, he contends that the ALJ (1) failed to consider his obesity and (2) erred when she concluded that Plaintiff could not satisfy Listing 1.04 on the basis that "the evidence does not establish the existence of nerve root compression." (R. 18.)

##### 1. Obesity

Social Security Ruling 02-1p requires an ALJ to consider the effects of obesity at several points in the five-step process. *See* SSR 02-1p. Plaintiff's body mass index was calculated to be 44 (R. 106), which the Social Security Administration recognizes as Level 3, that is, extreme obesity, the most severe of three levels. *Id.*

Several doctors noted Plaintiff's weight and height and his body mass index. Beyond that, Plaintiff has not cited any evidence in the record regarding the effects Plaintiff's obesity had on his medical condition. There is no discussion that he should lose weight or that his weight might contribute to the pain he experiences in his legs and feet. In addition, Plaintiff does not

specify in his memorandum how his obesity impairs his ability to work, but states only that his testimony and the medical evidence from treating and consulting physicians indicate that his ability to ambulate is very severely compromised and that his obesity is a definite factor.

Plaintiff did not specifically claim obesity as an impairment either in his disability application or at his hearing. Nevertheless, the references to his weight in his medical records were sufficient to alert the ALJ to the impairment. *See Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000) (holding that ALJ should have been alerted by "numerous references in the record" to the claimant's weight problem). Nevertheless, the ALJ is limited to a consideration of the evidence in the record. 20 C.F. R. § 404.1512(a) (stating that an ALJ need only consider impairments a claimant says he has, or about which the ALJ *receives evidence*) (emphasis added). Here, absent any discussion or opinions by medical sources regarding the effects of Plaintiff's obesity, the ALJ cannot be criticized for not articulating the effects of obesity on Plaintiff's ability to work. *See Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir. 1996) (stating that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings").

In her decision, the ALJ noted Plaintiff's weight and height (R. 20) and listed obesity as one of his impairments (R. 23). In addition, she expressly discussed the evidence related to Plaintiff's ability to walk. She observed that doctors' reports from examinations of Plaintiff in March 2001 and February 2002 indicate that Plaintiff walked with a normal gait. (R. 19.) She explained that she did not give Dr. Fletcher's statements regarding Plaintiff's difficulty with walking controlling weight because they were not supported by medical testing and were contradicted by the findings of those other doctors. (R. 19.)

The ALJ subsequently adopted the limitations suggested by the specialists and reviewing doctors who were aware of Plaintiff's obesity. As a result, obesity was indirectly factored into her decision as part of the doctors' opinions. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Nothing suggests that the ALJ disregarded Plaintiff's obesity when evaluating

whether his combined impairments satisfied a listed impairment. *See Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005). As noted above, the ALJ expressly discussed Plaintiff's ability to ambulate and determined that Plaintiff's condition did not meet the definition of ineffective ambulation. Based on the evidence in the record, the Court concludes that the ALJ adequately addressed issues raised in the record regarding Plaintiff's obesity.

## 2. Nerve Root Compression

Regarding Plaintiff's argument related to the existence of nerve root compression, Plaintiff states that his myelogram established significant lateral recess stenosis and juxta-fusion stenosis. The Court notes that the criteria for Listing 1.04A include evidence of nerve root compression "*accompanied by* sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test . . . ." 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04A (emphasis added). Therefore, assuming that Plaintiff's myelogram provided evidence of nerve root compression (Defendant disagrees); that alone is not enough to satisfy the requirements of the listing. The ALJ's decision recognizes this; she explicitly stated that Plaintiff failed to satisfy the *other neurological abnormalities* required by Listing 1.04A. (R. 18-19 (emphasis added).) For example, the record shows that Dr. Michael's examination of Plaintiff indicated negative straight leg raising (R. 174) while Listing 1.04A requires a positive straight-leg raising test. Furthermore, Plaintiff also acknowledges in his memorandum that the neurological findings regarding stenosis alone do not establish a Listing 1.04 impairment. (#8, p. 7 (stating "the neurological findings alone do not establish a listing 1.04 impairment . . .").) Thus, even if the ALJ erred when she stated that the record did not establish the existence of nerve root compression, she did not err when she concluded that Plaintiff did not satisfy Listing 1.04A. Similarly, the ALJ properly analyzed whether Plaintiff satisfied Listing 1.04C because that listing requires an "inability to ambulate effectively" and the ALJ separately concluded that the medical evidence showed he did not have difficulty with that requirement. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 1.04C; *see Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999) ("To meet or equal a listed impairment, the claimant must satisfy all of the criteria of the listed impairment.").

Plaintiff bears the burden of proving his condition meets or equals a listed condition. *Id*. The ALJ's errors, if any, related to issues of obesity and nerve root compression, were harmless. *See Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003) (applying harmless error review to ALJ's determination). Based on these arguments, the Court cannot conclude that substantial evidence does not support the ALJ's determination at step three. Accordingly, Plaintiff has failed to show that his condition meets or equals a listed impairment.

### B. The ALJ's Consideration of Dr. Fletcher's Opinion

Plaintiff next argues that the ALJ erred by rejecting Dr. Fletcher's opinion that Plaintiff was disabled. Regulations require an ALJ to evaluate medical opinions in light of the patient's relationship and length of treatment with the doctor, how well-supported and consistent the opinions are, specialization of the doctor, and other factors. 20 C.F.R. § 404.1527(d)(2). A treating physician's opinion should usually be given more weight than the opinion of a nontreating physician because the treating physician has a longitudinal perspective on the claimant's health. *Id*. However, to merit controlling weight, the treating doctor's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [not be inconsistent] with the other substantial evidence." *Id.*; *see, e.g., Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995).

As an initial matter, Dr. Fletcher does not appear to be Plaintiff's treating physician. According to the record, Plaintiff's employer sent Plaintiff to see Dr. Fletcher, the company doctor, for purposes of a "fitness for duty evaluation." (R. 163.) Dr. Fletcher's clinical notes in the record do not indicate any treatment although he did refer Plaintiff to other doctors for further evaluation. In fact, the consultation notes indicate that Dr. Fletcher advised Plaintiff to contact his family physician, Dr. Bock, "to manage all of these different problems." (R. 155.) Furthermore, Plaintiff had only a handful of appointments with him over a period of several months related to the fitness for duty evaluation. Thus, Dr. Fletcher had no longitudinal perspective on Plaintiff's health that would merit treating his opinion as if he were a treating physician.

Regarding Dr. Fletcher's opinions, after Plaintiff's October 2001 appointment for a "fitness of duty evaluation," Dr. Fletcher reported as follows:

> In my opinion, he is not fit for duty. We do not have a definite diagnosis of what is wrong with him. He cannot feel his feet. He is asensate. He is limping. I feel there is a risk of him being in the workplace until we get a proper diagnosis and treatment.

(R. 163.) After evaluation by other doctors in the interim, Plaintiff had follow-up appointments with Dr. Fletcher in November and December 2001. After the December appointment, Dr. Fletcher reported as follows:

> [Plaintiff] is still symptomatic like before. He still has numbness and tingling in his legs. He is overweight. He has bilateral osteoarthritis of the knees. He has a history of an operated back. He has definite electrodiagnostic tests for tarsal tunnel syndrome. His gait is still very abnormal. He has been operated on his upper extremities for bilateral cumulative trauma problems. In my opinion, he is not fit for his job working in the cell environment. I believe he would be a threat to his health and safety. I have advised him to contact his family physician, Dr. Bock, whom I talked to, to manage all of these different problems and Dr. Borowiecki, and (*sic*) orthopedic surgeon. I am still concerned about proximal nerve compression and would like to see if he can get a myelogram/post myelogram CT scan. This would be something he should get done on his group insurance. At this point, I have kept him off work with no recheck.

(R. 155.)

In her decision, the ALJ discussed Dr. Fletcher's reports as follows:

> Dr. Fletcher's statements are considered and given some weight as to the type of symptoms the claimant experiences, but not as to their vocational relevance. Dr. Fletcher's company "Safeworks" is apparently in business to provide evidence for worker's compensation cases and his reports are primarily a recitation of the claimant's subjective statements and a synopsis of other doctor's reports. Dr. Fletcher's statements, for example that the claimant can not walk normally, are not accompanied by anything other than the subjective statements of the claimant and are not supported by actual examination.

(R. 21.)

Dr. Fletcher's opinion that Plaintiff is unable to work describes the effect of a claimant's symptoms on his ability to perform his current job of machine operator. A statement by a medical source that a claimant is disabled does not mean that such claimant is disabled under the terms of the Act. 20 C.F.R. § 416.927(e). Thus, this type of opinion "will not alone establish that [one is] disabled," and the ALJ is bound only to consider, not accept, such a statement. *Weinberg v. Apfel*, No. 97C2856, 1998 WL 295492, *4 (N.D. Ill. May 22, 1998) (not reported) (quoting 20 C.F.R. § 404.1529). The ALJ bears the final responsibility for deciding the issue of disability. *See Diaz*, 55 F.3d at 306 n.2 (stating that the ALJ should determine the claimant's RFC by reviewing the entire record). However, if the ALJ rejects the treating doctor's opinion, she must reasonably articulate her reasons for doing so. *Id.*

Here, the ALJ stated that she gave Dr. Fletcher's treatment notes regarding Plaintiff's inability to walk little weight because those reports were inconsistent with the observations of other doctors. Thus, the ALJ adequately articulated her reasons. Based on this explanation, the Court cannot conclude that the ALJ erred by not giving Dr. Fletcher's opinion greater weight even if other interpretations of the evidence are possible. *See Books*, 91 F.3d at 977-78 ("[S]o long as, in light of all the evidence, reasonable minds could differ concerning whether Books is disabled, we must affirm the ALJ's decision denying benefits.").

### C. The ALJ's Evaluation of Plaintiff's Peripheral Neuropathies

Plaintiff next argues that the ALJ failed to properly evaluate Plaintiff's peripheral neuropathies. Specifically, he contends that the ALJ never mentions or analyzes Plaintiff's peripheral neuropathies in conjunction with Listing 11.14. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, 11.14. Plaintiff contends that, when considered together, his peripheral neuropathies, obesity, and severe back problems satisfy the requirements of Listing 11.14, which directs a finding of disabled if the claimant has a severe impairment of gait and station.

The ALJ listed "diffuse neuropathy of the lower extremities" as one of Plaintiff's medically determinable impairments. (R. 23.) She also addressed Plaintiff's ability to ambulate,

noting that medical evidence contradicted Dr. Fletcher's observation that Plaintiff had difficulty walking. For example, in March 2001, Dr. Schlagel observed that Plaintiff shuffled when he walked, but stated that he had a "normal gait with good toe, heel and tandem walking." (R. 120-21.) In February 2002, Dr. Atluri's examination indicated significant sensory loss in both lower extremities; nevertheless, he reported that Plaintiff walked with a normal gait and had no difficulty with tandem walking, walking on toes, walking on heels, squatting and rising, hopping on one leg, or with getting on or off the exam table during the examination. (R. 169.)

Although the ALJ did not expressly discuss the applicability of Listing 11.14, that listing directs a finding of disabled if the claimant has a severe impairment of gait and station. The ALJ's decision concluded that Plaintiff was not unable to ambulate effectively in terms of Listing 1.04 and the same conclusion would apply to Listing 11.14. Therefore, remand for explicit consideration of Listing 11.14 would not affect the outcome of this case. *See Keys*, 347 F.3d at 994-95 (applying harmless error review to ALJ's determination).

Here, the ALJ concluded that, while Plaintiff had shown his impairments caused him to be significantly limited in the work he could perform, he had not shown that he could not work at all. Once the Court determines that the ALJ reasonably interpreted the evidence and adequately articulated his reasoning, the Court may not overturn her decision. *Books*, 91 F.3d at 978. Because substantial evidence supports the ALJ's decision, the Court cannot conclude that the ALJ erred when she determined that Plaintiff was not disabled.

### IV.  Summary

For the reasons set forth above, the Court recommends **GRANTING** Defendant's Motion for an Order Which Affirms the Secretary's Decision (**#11**) and **DENYING** Plaintiff's Motion for Summary Judgment (**#7**). The parties are advised that any objection to this recommendation must be filed in writing with the Clerk within ten (10) working days after service of a copy of this recommendation. *See* 28 U.S.C. 636(b)(1). Failure to object will

constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 27th day of January, 2006.

s/ DAVID G. BERNTHAL
U.S. MAGISTRATE JUDGE
